```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                          TAMPA DIVISION

UNITED STATES OF AMERICA,      )  Tampa, Florida
                               )
                  Plaintiff,   )  No. 8:10-cr-386-T-33TGW
                               )
                               )  Docket No. 58
            vs.                )
                               )  March 25, 2020
JOSE MANUEL NARVAEZ REINA,     )
                               )
                  Defendant.   )  Courtroom 14B
_____)
```

**TRANSCRIPT OF STATUS CONFERENCE**
BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


**GOVERNMENT COUNSEL:**

    **Joseph Ruddy, Assistant U.S. Attorney**
    United States Attorney's Office
    400 North Tampa Street, Suite 3200
    Tampa, Florida 33602
    (813) 274-6000

**DEFENSE COUNSEL:**

    **Scott Kalisch, Esq.**
    Law Offices of Scott Kalisch
    435 South Oregon Avenue, Suite 104
    Tampa, Florida 33606
    (305) 669-0808


                *Official Court Reporter:*

                *Scott Gamertsfelder, RMR, FCRR*
                *801 North Florida Avenue*
                *Tampa, Florida 33602*
                *Telephone:  (813) 301-5898*

*(Proceedings reported by stenotype; Transcript produced by computer-aided transcription.)*

1                    **P R O C E E D I N G S**

2    March 25, 2020                                    10:15 a.m.

3                         - - -

4            (Court called to order.)

5            THE COURT:  Good morning.

6            We are here for a status conference in United

7    States versus Jose Manuel Narvaez Reina, Case No.

8    8:10-cr-386-T-33TGW.

9            I'll begin by having counsel state their

10   appearances.  Who do we have for the government?

11           MR. RUDDY:  Joseph Ruddy for the government.  Good

12   morning.

13           THE COURT:  Good morning, Mr. Ruddy.

14           And for the defendant?

15           MR. KALISCH:  Scott Kalisch.

16           THE COURT:  Welcome, Mr. Kalisch.

17           So, Mr. Kalisch, you had asked for the Court to

18   schedule a hearing, and I think that we will just put a few

19   things on the record by way of background; and if I've said

20   something incorrect, please let me know.  And it's okay to

21   stay seated.  There is no need to stand during this hearing.

22           So as I recall, going through what I have, on June

23   29th, 2012, Mr. Narvaez pled guilty pursuant to a written

24   plea agreement to one count of conspiracy to possess with

25   intent to distribute 5 kilograms or more of cocaine -- and it

1   was substantially more than 5 kilos -- while on board a

2   vessel subject to the jurisdiction of the United States.

3            He was designated an offense level 38, Criminal

4   History Category I, and it was a range of 235 to 293 months.

5   I sentenced him on December 6th, 2012.

6            I think, Mr. Ruddy, going back through the

7   transcript which has been filed on the record, that

8   Mr. Narvaez had been cooperative since his arrest, and he

9   thought it very likely that a Rule 35 would be filed on his

10  behalf.

11           He was sentenced -- the defendant was sentenced to

12  235 months' imprisonment, and in February 2019, Mr. Narvaez

13  filed a motion to compel the government to file a Rule 35.

14  Of course, we all know I can't compel the government to file

15  a Rule 35, but I will tell you why I enter the orders that I

16  do.  It's because when you have people coming and going from

17  the U.S. Attorney's Office, sometimes these things slip

18  through the cracks or agents leave.

19           Obviously, Mr. Ruddy is not in that category

20  because he's still there at the U.S. Attorney's Office, but

21  others come and go, and sometimes the new person doesn't know

22  what the old person knows or the former employee knows.  So I

23  just -- what I normally do is I enter an order asking the

24  government for a status.  That way, if there's been something

25  that has slipped through the cracks, I feel like I've covered

1    it.  But I well recognize I have absolutely no authority to

2    order the government to do anything with respect to a

3    Rule 35.

4            So what the government said was, the defendant

5    remains an essential witness in a pending sealed indictment

6    in the Tampa Division.  Once the case is resolved, the

7    government anticipates a Rule 35 to be filed.

8            So I denied the motion without prejudice.  Again,

9    of course, totally recognizing I have zero authority to order

10   the government to file it.

11           Mr. Narvaez filed another motion in February of

12   2020, and I ordered the government to respond.  The

13   government said in its response that the defendant remains an

14   essential witness in a pending sealed indictment.  This case

15   involves a fugitive, and the defendant's cooperation was used

16   to obtain the sealed indictment.  The defendant will be an

17   essential witness for the government, and the government

18   anticipates filing a Rule 35 down the road.

19           So, again, I denied the motion without prejudice.

20           Mr. Kalisch, I think you filed your motion for a

21   status, raising two points.  You've said that the defendant's

22   cooperation has resulted in the sentence of multiple

23   defendants, and I guess you provided that information, it

24   sounds like, to the government.  You say by way of e-mail,

25   all of these defendants have been sentenced and this

1    defendant's cooperation must be deemed complete and that he

2    may well qualify for an 8- to 10-level sentence reduction.

3    And you pointed to a case of Gonzalez Rhondo, and you also

4    pointed out how Mr. Narvaez has served 105 months.

5            MR. KALISCH:  Yes, 105 months.

6            THE COURT:  So 105 months of the sentence.

7            A similar 8-level reduction would put Mr. Narvaez

8    in the guideline range of 97 to 121 months.  So I will tell

9    you, I also had one the other day -- I think it was

10   Mr. Ruddy's case.  At this moment I don't have it in front of

11   me.

12           Was this the case?  No, the one you filed

13   recently, Mr. Ruddy, where I reduced it.

14           MR. RUDDY:  You're not narrowing it down, Your

15   Honor.  I literally have dozens of these.  I have so many I

16   can't keep track of them.  I have stacks of them in my

17   office.

18           THE COURT:  I just had one the other day.  I can't

19   remember the name of the case, but I had one which was

20   Mr. Ruddy's case and --

21           MR. KALISCH:  I think it was the case that I cited.

22           THE COURT:  I had some of Judge Kovachevich's

23   cases transferred to me, and I believe it was Gonzalez.  I

24   don't have my cases straight.  So that's the one you cited.

25   It just has the old number, Judge Kovachevich's old number in

1    it.  Right, she's 17 and I'm judge 33.

2            So in her case that she had originally -- she was

3    the original sentencing judge -- she sentenced that defendant

4    to whatever it was, 235 months, and then I reduced the

5    sentence.  I didn't even wait for a response from the

6    defendant because I was concerned about the time starting to

7    run.

8            MR. KALISCH:  I represented the co-defendant in

9    that very case, Your Honor.

10           THE COURT:  So you got my order, then, on that.  I

11   think it probably would have been sent to everybody.  So I

12   reduced it to what the government asked for.  It looked fair

13   to me.  And I figured, well, if the defendant objects to it,

14   we will hear from them.  Let's just go ahead and get this

15   thing done, because he was pretty close to --

16           MR. KALISCH:  Nothing to object to, Your Honor.

17   He was released with time served.

18           THE COURT:  Okay.  Having said all that -- and I

19   say it by way of background, because I think it will allow us

20   to cut to the chase and so you know what I know.

21           I'll begin, Mr. Kalisch, by saying, normally this

22   is between the defendant and the government, but I certainly

23   see -- I most certainly see why you called it to my

24   attention.

25           Mr. Ruddy has a lot of cases, and a lot of people

1  have come and gone from his section, so he has all that stuff

2  he's dealing with.  Not only his own cases, but a lot of

3  other people's cases.  Plus, we have got all the coronavirus

4  issues out there.  So it's a challenging time.  It's a

5  challenging time.

6          So have you had the chance to talk to Mr. Ruddy

7  about this?  Or is there something you would like to say to

8  the Court, because the problem is -- I see where you are

9  coming from.

10         MR. KALISCH:  Your Honor, it's very frustrating to

11  a defense attorney in this position because, as Your Honor

12  states, there is very little we can do, but we can call the

13  matter to Your Honor's attention, especially when there is a

14  case cited recently that looks so much like your own case,

15  and he's released.

16         I've certainly been in touch with Mr. Ruddy by

17  e-mail.  I've also been in touch with the agents in this case

18  and following the government's motion which is dated February

19  26th, 2019.  Two agents contacted me.  The case agent, Dan

20  King, and another agent, Jessica Sandavol, contacted me to

21  say their charges, their people that they were working with,

22  had completed their cooperation.

23         I then tried to e-mail Joe Ruddy and advise him to

24  please look at the cases again.  And as he said, he had a

25  stack of cases, but mine seems to be put in a special stack,

1    I suppose, because I don't get a response from Mr. Ruddy at

2    all.  And it's frustrating to me and sometimes -- now with

3    the coronavirus, I thought it would be appropriate to bring

4    this to the Court's attention.

5            I think it's incumbent upon the United States

6    Attorney's Office to file these Rule 35s when they are

7    appropriate.  The agents have said their charges have

8    completed their cooperation, and that was a year ago that the

9    government said that they had an extra witness.

10           There have been seven defendants who have been

11    sentenced based on my client's cooperation.  That's more than

12    the defendants that cooperated in the case of Alex Rhondo,

13    who was reduced to 8 levels.

14           So I'm in an unknown world.  The case agent has

15    assured me that -- as a matter of fact, if I could quote him.

16    I have his e-mail.  He says, "I feel horrible that he is not

17    being taken care of.  He has gone above and beyond.  I have

18    asked Mr. Ruddy to provide you with the name of the target.

19    I will ask him again today."

20           So I don't get any response from Mr. Ruddy.  And

21    that, of course, is extremely frustrating.  I think if there

22    is somebody out there, whom I don't know -- I believe he

23    might have already arrived and been sentenced; but if I don't

24    get word from Mr. Ruddy about that, then I'm in an unknown

25    world.  And I would hate to have any other defense attorneys

1    in this world, because we cannot respond adequately to our

2    clients, who don't understand that the government has the

3    sole authority to decide this issue, but at the same time

4    they expect their lawyers to be able to speak to the

5    attorney, U.S. Attorney, and have some sort of exchange about

6    what is going on.

7              I don't get that from Mr. Ruddy at all.  I don't

8    get it.  I have very little contact with Mr. Ruddy, and it's

9    very frustrating.  I have more contact with the agents.  I

10   don't know if it's a personal thing with me, but that's why I

11   put it on the calendar, because I need to know whether or not

12   my being the defense attorney on these cases has something to

13   do with the government's not filing a Rule 35.

14             If that's the case, then I will drop out of the

15   cases.  I will withdraw from these cases because I'm not

16   doing them any good; but if that's the case, I would like to

17   know it.  If there is something personal about my

18   representing these defendants that caused Mr. Ruddy not to

19   file on their behalf -- this man has completed a very

20   substantial amount of cooperation, and the case agent himself

21   has said he feels badly about it.  But if I get no response

22   from Mr. Ruddy, then I begin to think it is a personal thing

23   with me.  And I want an assurance it's not.

24             But I don't think that level of power is

25   appropriate without any sort of recourse.  The rule is the

1   rule, and we both know the rule very well.  I've tried to

2   file -- when the prosecutor manifests himself on the record

3   as clearly as Mr. Ruddy does, I've tried to file a motion

4   under Sansabao to the fact this is a contract, but that

5   doesn't go very far.

6           So there is only one remedy, and that's that the

7   government in good faith follows up on its cases and not just

8   a stack of clients' cases that "I have over here that I'm

9   trying to get to."

10          These people are in jail, and the coronavirus is

11  spreading, and they have done their work and they, I think,

12  deserve a look, if I'm putting it correctly.  That's the way

13  I feel.

14          THE COURT:  Thank you, Mr. Kalisch.  I think the

15  best thing is to hear from Mr. Ruddy.

16          Mr. Ruddy.

17          MR. RUDDY:  Yes, Your Honor.  I think Chris Rock

18  [sic] says, "Do you understand the words that have been

19  coming out of my mouth?"

20          I have put on two pleadings that the defendant's

21  cooperation is not complete.  Until it's complete, we are not

22  filing a Rule 35 based upon cooperation he provided to indict

23  people that have not been prosecuted yet.  It makes no sense

24  for us to indict someone and then attempt to extradite them

25  and release our witnesses.

1          THE COURT:  I kind of figured that's what it was,

2     the concern with the defendant being deported, which he will

3     be deported.  Let's just say, if he were released tomorrow,

4     he would be deported within 30 days, or however long it takes

5     to deport somebody.  And the problem, I think, from your

6     perspective is then you would have a criminal case and no

7     witness to testify.

8          MR. RUDDY:  Right.  And that is totally illogical.

9     And it's not just Mr. Narvaez Reina.  That involves any

10    number of defendants similarly situated.  If their

11    cooperation is not completed, then we still need them.

12         And these agents that Mr. Kalisch is talking

13    about, they are looking at this from their own little corner

14    of the world.  They are, My case is complete; he deserves

15    credit.  Of course he does.  I understand that.

16         I have the whole field of vision and those agents

17    don't.  They are just in their own little world and, oh, he

18    did everything he could for my case and that's all I care

19    about.  Well, that's all they care about, but I have a little

20    greater responsibility than those agents do.  I need to

21    verify that everything has been done.

22         Everything has not been completed, and I don't

23    know when that's going to happen.  But when it does happen,

24    we will give him credit.  But in the interim, we are not

25    releasing witnesses that we need to prosecute our cases.

1          THE COURT:  Well, he's kind of in a catch-22,

2     though.  And I certainly understand your perspective,

3     Mr. Ruddy.  Without even talking to you I figured that had to

4     be what had occurred here.

5          MR. RUDDY:  I couldn't state it more clearly.

6          THE COURT:  I understand.  His frustration is,

7     I've done what I'm supposed to do.  Another person similarly

8     situated has gotten 8 levels off.  What good is 8 levels off

9     when I would have served my sentence already?  So what's the

10    point?

11         MR. RUDDY:  Right.

12         THE COURT:  That's his frustration.

13         MR. RUDDY:  Your Honor, he takes it like he's

14    paying a bar tab.  I'm ready to go; give me the bill; I want

15    to pay.  That's not what this is about.

16         This was a major trafficker who knew a lot of

17    people and he cooperated against a lot of people and gets a

18    sentence reduction.  Well, he will be released when his

19    cooperation is completed because that's what a Rule 35 is.

20         We don't say, well, you testify against who you

21    want to and we will just forgive the rest.  No, you tell

22    everything you know about everyone you've been involved with

23    and you are a witness against those individuals.  If you

24    cooperate and you are truthful against all those people, you

25    will get credit for it.

1          We do that all the time.  We have done it for 30

2   years, 20 years since PanEx has been in place, and there are

3   some defendants who finish off their cooperation sooner than

4   others.  I don't chart that out.  I don't plan it that way.

5   That's just the way the cookie crumbles, unfortunately.

6          There have been people who have served their

7   sentence and I've kept them here after that because of being

8   a material witness.  And that's exactly what happened with

9   Narvaez Reina.  If he thinks he's going home, he has a worm

10  in his brain.  He "ain't" going home.

11         MR. KALISCH:  Well, Your Honor, what does that

12  mean?  Does that mean that Mr. Ruddy is not going to give him

13  a reduction at all?  He's not going home?  He will have to

14  serve out his sentence and beyond?

15         THE COURT:  I think he means he's not going home

16  now.  He's not going home until the cooperation is complete,

17  as Mr. Ruddy said.

18         MR. KALISCH:  Is that what he means?  Because the

19  communication is not good.  Mr. Ruddy thinks it's clear as

20  he's saying it, but this was a year ago that he said that

21  there was an outstanding witness.  I don't know who the

22  witness is.  I can imagine who it is.

23         I believe Mr. Reina cooperated beyond the initial

24  cooperation, because an agent went out and saw him and asked

25  him if he knew this person.  I believe there are other

1  witnesses available against this person, whoever that person

2  is.  But at this point, one year after, Mr. Ruddy has said

3  that we need him for this witness.  I don't know if that

4  witness is here or still in Colombia.  That type of

5  communication doesn't exist between us.

6      And when he says something like he's not going

7  home, without saying he's not going home now, as Your Honor

8  stated clearly, that's the type of communication that I don't

9  think furthers the attorney-client relationship at all.

10     If there were a little bit more -- I don't think

11 counsel is prohibited from telling me, we expect this new

12 witness in the next six months.  Be a little bit forthcoming

13 about when is this cooperation.

14     If this status conference achieves nothing but to

15 enhance the mitigation between opposing counsel insofar as

16 these matters of cooperation and how long they will take, but

17 to walk away and to not get any kind of response, any kind of

18 understanding about it.  It's been a year -- over a year.

19 Has this guy died?  Is he still in Colombia?  Is he here?  Is

20 he going somewhere else?  Do you expect a reduction?

21     THE COURT:  Well, the U.S. Attorney's Office is

22 not always able to give you the information you would like,

23 and there are a whole host of reasons for that.

24     I mean, I certainly feel your frustration,

25 Mr. Kalisch.  I really do.  But Mr. Ruddy is a really

1  experienced prosecutor.  I can't even imagine that any of it

2  is personal at all.  I mean, I just can't imagine it.

3       I don't know, Mr. Ruddy, if you want to say

4  anything to Mr. Kalisch.

5       But I just can't even imagine that he would do

6  something like that.  So I think it's just that for whatever

7  reasons he doesn't -- the U.S. Attorney's Office is not able

8  to give you that information.

9       I think it is important to have open lines of

10  communication.  So to the extent that you are able to,

11  Mr. Ruddy, I think it's always good to keep Mr. Kalisch in

12  the loop, but I understand there are lots of things that you

13  simply can't talk about.

14       MR. RUDDY:  Right.  The status of the fugitive is

15  he remains a fugitive.  If that status changes, I will advise

16  counsel, but that's the state of the case against -- not the

17  witness, but the defendant who is a fugitive that Mr. Narvaez

18  Reina is a witness against.

19       THE COURT:  So, in other words, Mr. Narvaez is in

20  for a wait.  This isn't going to happen tomorrow.

21       MR. RUDDY:  That's the unfortunate reality, Your

22  Honor.

23       We are happy to give Rule 35 credit when

24  cooperation is completed.  We are not there yet with this

25  defendant, and that's just the hard reality.  There are only

1   so many times I can say the same thing.

2          THE COURT:  Mr. Kalisch, I don't know what else to

3   say other than --

4          MR. KALISCH:  I appreciate it, Your Honor.

5          THE COURT:  I almost want to echo, because I only

6   have a little piece of the picture, as well, with what the

7   agent said.  I'm really sorry and feel really bad for your

8   client.  I feel exactly the way the agent does, because the

9   agent has a small piece of the picture in front of him, as do

10  I.

11         MR. KALISCH:  I had thought that this unknown

12  defendant was in custody already in Colombia.  I don't know

13  who he is, but now I'm told that he's still a fugitive.  So

14  they haven't documented him yet.  So Mr. Reina may have to

15  serve out his entire sentence even though he's cooperated as

16  much as he has.

17         Does the government have some duty, some

18  inner-duty to assess the defendant's cooperation at some

19  point and say he deserves a reduction, even though he's not

20  completed it because we can't find this other person?

21         I can't tell the government to do that, but does

22  the government have a sort of soul searching, with a stack of

23  cases next to him, on any particular case, which I tried to

24  bring to his attention and the government says, well, in this

25  particular case he's done so much cooperation and we don't

1  have this defendant?

2          Who's to say to Mr. Ruddy, Mr. Ruddy, don't you

3  think it's time to take a look at this case and perhaps

4  figure out if there are other witnesses or find out how close

5  you are to having him arrested?  I mean, what he's telling

6  the Court now and what he's telling me, there is no date

7  here.

8          THE COURT:  Well, I'll tell you this:  Reading

9  between the lines, even if they filed a Rule 35 tomorrow and

10  your client were sentenced to time served, they would keep

11  him here as a material witness.  Your client would not be

12  released or returned.  That's what I think --

13          MR. RUDDY:  Yes.

14          THE COURT:  -- based on what I've heard.  He's not

15  going to be released.

16          MR. KALISCH:  If that's the case, then, of

17  course --

18          THE COURT:  Maybe you can find some -- I don't

19  think there is any authority, because I've looked at the -- I

20  haven't looked at it recently, but I've looked at it some

21  time ago.  The first time I ordered the government to file a

22  response to this -- I don't know when it was, 10 years ago or

23  so -- I realized I don't have any authority on these

24  Rule 35s.  Zero.  Zero.

25          MR. KALISCH:  Judge Kovachevich wrote an opinion

1   that was very clear about that, that not even the Court has

2   the authority to order the government to file a Rule 35.

3            THE COURT:  But they know how important it is to

4   have cooperators.  Mr. Ruddy knows that better than I do.

5            MR. KALISCH:  I should think so, because the word

6   does get out -- cooperate and you will not be released.

7   There is a sense out there that what he did in cooperating

8   against this further individual was not something that was

9   advisable.

10           I tell my clients to cooperate 100 percent, but

11  there are a lot of people in prisons right now who won't tell

12  you -- won't give the government information about people

13  after they have given their initial debriefing because they

14  know what's going to happen -- just this.

15           So the government has to know that this word gets

16  out and they won't get the information they are looking for.

17  This defendant, my client, was 100 percent cooperating, and

18  in total good faith.  He was a high-level drug smuggler.  I

19  don't think -- you might remember his brother was killed by

20  another drug gang.  His brother and -- couple of brothers and

21  all of their chauffeurs.  This was a really --

22           THE COURT:  I know by the weight that he was

23  charged with that this was much more than a small case.  It

24  was very, very significant.

25           MR. KALISCH:  I appreciate that, Your Honor.

1          THE COURT:  I think your client has just been

2    caught with a challenging set of circumstances.  It's very

3    rare for me to have a Rule 35 for time served.  I've had a

4    couple.  I've had fewer than five, maybe.  Fewer than five.

5    Maybe three Rule 35s for time served.  I try to move on them

6    as quickly as I can.  I think they understand how important

7    it is.  It's just an unfortunate set of circumstances.

8          MR. KALISCH:  Thank you, Your Honor.

9          THE COURT:  I will say this, if you want to do

10   another status request, like, in six months, maybe,

11   Mr. Kalisch, I'm happy to do this again in six months.  Or to

12   do anything else to be of assistance.

13         MR. KALISCH:  That would be great.

14         THE COURT:  This is March.  Like, maybe in October

15   or something like that.

16         MR. KALISCH:  All right.

17         THE COURT:  And at least a general -- you'll be

18   able to get a general update, but --

19         MR. KALISCH:  October, Your Honor?

20         THE COURT:  -- you need to move for it.  Why don't

21   you just move for a status.  You move for a status conference

22   if you feel you need to.  If you feel you need to.

23         MR. KALISCH:  Thank you, Your Honor.

24         THE COURT:  And I will schedule it, like, in

25   October, something like that, if you feel you need it.

1           MR. KALISCH:  Thank you, Your Honor.

2           THE COURT:  All right.  Okay.  Is there anything

3    else to take up today, Mr. Ruddy?

4           MR. RUDDY:  No, Your Honor.  Thank you.

5           THE COURT:  Thank you, Mr. Ruddy.

6           Mr. Kalisch, thank you very much.

7           We are in recess.

8           (Proceedings concluded at 10:42 a.m.)

9                         - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT   )
                               )
MIDDLE DISTRICT OF FLORIDA     )


**<u>REPORTER CERTIFICATE</u>**


    I, Scott N. Gamertsfelder, Official Court Reporter for the United States District Court, Middle District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript from the stenographic notes taken by the undersigned in the matter of *UNITED STATES vs. JOSE MANUEL NARVAEZ REINA*, Case No. 8:10-cr-386-T-33TGW (Pages 1 through 20), and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.


    /s/ *Scott N. Gamertsfelder*, RMR, FCRR

    *Official Court Reporter*

                 Date: April 2, 2020